SUSAN E. BRITTON

*v.*

THE SUPREME COUNCIL OF THE ROYAL ARCANUM, ROBERT M. BRENNAN and another.

1. Where a corporation is organized under a statute authorizing the formation of corporations to accumulate a fund to be paid to the widows and children of deceased members, neither the corporation nor a member can divert any part of the fund from those for whose benefit it was accumulated.

2. Where the beneficiaries of a benevolent corporation are prescribed by law, it is an evasion of its policy, and a violation of its letter, to say, that where a member has named a person not within the class to be benefited, and the corporation has issued the certificate to such person, such acts shall deprive the proper person, or class of persons, of all right to or interest in the fund.

3. A falsehood or fraud that does not result in legal injury can neither be made the foundation of an action nor the ground of a defence.

4. The phrase "legal heirs," used in one of the defendant's by-laws, directing that in case a member makes no appointment of a beneficiary, his benefit shall, on his death, be paid to his legal heirs dependent on him, should be construed to mean next of kin.

5. Where there is a civil wrong there ought to be a remedy, and if the law gives none, equity may take jurisdiction in order that what is right may be done.

On final hearing on bill and answer and proofs taken before a master.

*Mr. Charles H. Voorhis*, for the complainant.

*Mr. William Brinkerhoff*, for the defendant corporation.

VAN FLEET, V. C.

The complainant brings this suit to compel the Supreme Council of the Royal Arcanum to pay her the sum of $3,000, which she alleges she became entitled to by the death of her son, Merritt C. W. C. Britton, under a contract made by her son with the defendant. Her son was a member of the defendant corporation at the time of his death. He was admitted as a full-rate member on the 13th day of February, 1884, and died on the 2d day of May, 1886. He died childless, never having been married, and his nearest kindred at the time of his death were the complainant and two brothers. The defendant is a corporation organized under statutes of Massachusetts, authorizing the formation of corporations to raise a fund " for the purpose of assisting widows, orphans, or other relatives of deceased members, or persons dependent upon deceased members." By a statute passed in 1877 the persons to whom the accumulated fund of such a corporation could be dispensed or paid, were limited to " widows, orphans, or other persons dependent on deceased members." But a statute passed in 1882 enlarged the class of persons who might become the beneficiaries of the fund accumulated by such a corporation so as to embrace " widows, orphans, or other relatives of deceased members, or persons dependent upon deceased members." *American Legion of Honor* v. *Perry, 140 Mass. 580.*

The contract on which the complainant rests her right to relief is to be found in the application for membership made by her son, the certificate of membership issued to him and the constitution and by-laws of the defendant corporation. One of the principal objects of the defendant corporation, as its constitution declares, is to establish a widows and orphans' benefit fund, from which, on satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding $3,000 shall be paid to his family, or those

dependent on him, as he may direct.    One of its by-laws ordains
that there shall be paid on the death of each full-rate member,
who is in good standing and not under suspension for any cause
at the time of his death, the sum of $3,000.    This payment is to
be made by a draft drawn by the secretary on the treasurer, in
favor of the person entitled to the benefit, and delivered to the
payee, who must, when he presents his draft to the treasurer for
payment, surrender the outstanding benefit certificate.    Another
by-law provides that each applicant for membership shall enter
on his application for membership the name of the person to
whom he desires his benefit paid on his death, and that the
name of the beneficiary so designated shall be entered in the
certificate issued to the member.    Members have the right to
change their beneficiary on surrendering the benefit certificate
previously issued, and to have a new certificate issued in the
name of the new beneficiary.    By another by-law, it is ordained
that

"In the event of the death of all the beneficiaries, designated by the mem-
ber in accordance with the laws of the order, before the decease of such mem-
ber, if he shall have made no other or further disposition thereof, the benefit
shall be paid to the legal heirs of the deceased member dependent upon him;
and if no person or persons shall be entitled to receive such benefit, by the
laws of this order, it shall revert to the widows and orphans' benefit fund."

By the constitution and by-laws, no person is qualified to
become a member of the defendant corporation unless he is a

"White man between twenty-one and fifty-five years of age, of sound health,
of good moral character, a believer in a Supreme Being, and competent to earn
a livelihood for himself and family."

The foregoing summary states in substance all of the pro-
visions of the constitution and by-laws pertinent to the present
discussion.

In his application for membership Merritt C. W. C. Britton
designated Robert M. Brennan as the person to whom he desired
his benefit to be paid on his death, and in the certificate which
the defendant issued to Britton, Brennan was named as bene-
ficiary, and Britton, after obtaining the certificate, delivered it to

Brennan, who still retains it, and who has, on demand, refused to surrender it. Brennan was not related to Britton, nor was he in anywise dependent on Britton. The proofs show that Brennan was a creditor of Britton, and that the reason why Britton appointed him his beneficiary, and delivered his certificate to him, was to secure him for a debt. Brennan can take nothing under this appointment. Britton's attempt to make Brennan his beneficiary must be treated as nugatory. In another case involving the same question, I have said, in conformity to what I understand to be the uniform course of decision on this subject, that, where a corporation is organized under a statute authorizing the formation of corporations to accumulate a fund to be paid to the widows and children of deceased members, the corporation can only pay the fund to the widows and children of deceased members; and if it should make a promise to pay any part of it to any other person its promise would be void. Its promise would not only be *ultra vires*, but in direct contravention of the purpose of the statute from which it derived both its corporate existence and power. And a member of such a corporation is equally powerless to divert from its appointed channel that part of the fund of the corporation which becomes payable on his death. *American Legion of Honor* v. *Smith, 18 Stew. Eq. 466*. So that I think it must be regarded as entirely clear, that Brennan has no right whatever to the sum in controversy, nor to the certificate of membership issued to Britton.

The question of the case is, Did the complainant, by the death of her son, become entitled to the sum which she claims? The defendant says she did not, because her son procured his certificate of membership by deceit and fraud, and it has, in addition to answering, filed a cross-bill asking for the surrender and cancellation of the certificate. The fraud charged consists in a representation in his application for membership that Brennan was his cousin, when, in truth, no relationship existed between them. The following are the material parts of Britton's application:

"I am not now a member of this order; I have not within six months been rejected; am not now under suspension, and have never been expelled from

any council of this order; and am a believer in a Supreme Being. I reside at 305 York street, Jersey City. I was born on the seventh day of August, 1851, and am between thirty-two and thirty-three years of age. My occupation is that of a medical student; place of business, College of P. and S., New York city. I direct that, in case of my death, all benefit to which I may be entitled from the Royal Arcanum be paid to Robert M. Brennan, Hopewell, Mercer county, N. J., related to me as cousin, subject to such future disposal of the benefit among my dependents as I may hereafter direct in compliance with the laws of the order. I am temperate in my habits, and have no injury or disease which will tend to shorten my life; am now in good health and able to gain a livelihood. I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts by me in this application, or any suspension or expulsion from, or voluntarily severing my connection with, the order, shall forfeit the rights of myself and my family or dependents to all benefits and privileges therein."

The only one of the foregoing statements which it is asserted was either untrue or fraudulent, is the one in which it is stated that Brennan was related to Britton as cousin. But conceding, as it must be, that that statement was untrue, and that it was made knowing it to be untrue, the question which this condition of facts raises is this: Did that statement have the least effect in influencing or inducing the defendant into doing something to its harm or injury which it would not have done if no such statement had been made? It is clear, I think, that it cannot be considered a warranty. There is nothing in the constitution or by-laws which would warrant the court in so construing it. It has been held, that, where an applicant for admission to membership in a similar corporation made representations concerning the condition of his health, which were untrue, but which he supposed to be true when he made them, that they did not constitute warranties, nor preclude his beneficiary from recovering on the contract. *Illinois Masons Beneficial Society* v. *Winthrop, 85 Ill. 537.*

The only possible misleading effect which the statement in question could have had, was to produce the belief that Brennan was qualified to become Britton's beneficiary, when, in fact, he was not. But of this, it appears, the defendant's officers were informed by other statements contained in Britton's application. When Britton was admitted to membership, the defendant's bene-

fit fund could only be paid to the family of a deceased member or those dependent on him. So its constitution expressly declared. The word "family," as used in this part of the constitution, was manifestly used as the synonym of widow and children. To give it broader meaning, would put this provision of the constitution in conflict with the statute under which the defendant was organized, and thus render this part of the constitution invalid. That should not be done if a construction can be fairly adopted which will bring the constitution in harmony with the statute. After the statute of 1882 took effect, the defendant had authority to establish a fund for the benefit of other persons than the widows and orphans of deceased members, and persons dependent on deceased members—it might have established a fund, not only for the benefit of the widows and orphans of deceased members and persons dependent on deceased members, but also for the benefit of the relatives of deceased members other than widows and orphans—but, so far as appears, it never attempted to exercise such additional power. Until it shall have put in exercise such additional power, and established a fund for the benefit of other relatives of deceased members than widows and orphans, no person, who is not in position to claim as the widow or child of a deceased member, can successfully assert a right to any part of its benefit fund. *American Legion of Honor v. Perry, 140 Mass. 580, 592.*

Britton's application stated that he resided at Jersey City and that Brennan resided at Hopewell, Mercer county, so that the application gave the defendant's officers notice, on its face, that Brennan was not a member of Britton's family, but that they resided at different places, a long distance apart. The application did not represent that Brennan was dependent on Britton; it said nothing on that subject; all it said was, that he was Britton's cousin, but this did not qualify him to become Britton's beneficiary. He could not be Britton's beneficiary except he was dependent on him. And just in this connection, it is proper to state, that it appeared from Britton's examination before the defendant's medical examiner, which was annexed to his application and formed part of it, that he had three relatives nearer in

blood than a cousin, namely, a mother and two brothers. Britton was not required, either by the defendant's constitution or its by-laws, to make any representation showing that the person he selected was competent to become his beneficiary. He made none in fact. His statement that Brennan was his cousin, shows, or tends to show, that Brennan was qualified to become his beneficiary, but that statement, when considered in connection with others made at the same time, made it entirely plain that he was not. The question, whether Brennan possessed the qualifications necessary to enable him to become Britton's beneficiary or not, was so entirely aside from the question whether Britton should be admitted to membership or not, that it is almost certain that, during the time the last question was under consideration, the first never suggested itself to the mind of Britton, nor to the minds of the officers with whom he dealt. Whether the person designated by a member, on his admission, as his beneficiary, is qualified or not, is a question which is wholly unimportant and immaterial to the defendant. The designation then made will only continue in force so long as the member chooses to let it stand. He has a right to change his beneficiary as often as his will changes. The only limitation upon his power in that regard is, that he cannot make a designation which will divert that part of the fund payable on his death from its appointed channel. And whether he designates a qualified or incompetent person can have no effect whatever in either increasing or diminishing the defendant's liability. The sum which it must pay on the death of a member is fixed by its contract, as well as the person or persons to whom it must be paid. In no case can the defendant be required to pay until the certificate issued by it has been surrendered, or declared invalid. Britton undoubtedly told a falsehood when he said Brennan was his cousin, but his falsehood did the defendant no harm. A falsehood or fraud that does not result in legal injury can neither be made the foundation of an action nor the ground of a defence.

Nothing has been shown which entitles the defendant to the surrender of its certificate on the ground that it was fraudulently.

obtained, and its cross-bill must therefore be dismissed, with costs to the complainant.

Another defence is set up. The defendant insists that, by the terms of its contract, it is under no duty to recognize any person as the beneficiary of a deceased member except the one designated by him, and that if the person whom he has designated happens to be disqualified, it is not liable to anybody, but that, in such a state of circumstances, the sum which would have been payable on the death of the member to his beneficiary, had he designated a person competent to take, lapses and sinks into the widows and orphans' benefit fund. This defence is based on that provision of the constitution which declares, that one of the objects of the defendant is to establish a widows and orphans' benefit fund, from which, on the death of a member, there shall be paid a certain sum to his family or those dependent on him, *as he may direct.* The argument is, that as the contract says that that part of the fund payable on the death of a member shall be paid as he may have directed, it necessarily follows, that if a member dies without having exercised his right of direction, or if he has given a direction which he had no authority to give, nothing can be paid. The claim is, that the right of a beneficiary to take depends on the fact that the power of appointment, vested in a member, has been exercised in his favor, and that if he cannot show such an appointment he is without right. But this view manifestly overlooks another very material part of the contract. One of the defendant's by-laws, it will be remembered, ordains, in substance, that if the beneficiary, appointed by a member, dies in the lifetime of the member, and the member shall subsequently make no other or further disposition of that part of the benefit fund payable on his death, it shall, on his death, be paid to his legal heirs dependent on him ; and that if there be no person entitled to receive it, according to the laws of the order, it shall revert to the widows and orphans' benefit fund. If we look, then, at the whole contract, and construe it in the light of all of its provisions, it would seem to be clear, that there can be no lapse or reverter, except a member dies without leaving an heir dependent on him.

This is the construction which similar contracts have already received. In the case of the *American Legion of Honor* v. *Perry, supra,* the supreme court of Massachusetts said (*p. 589*): "The statute under which the plaintiff corporation is organized [the defendant in this case is organized under the same statute] gives it authority to provide for the widows, orphans or other dependents upon deceased members, and further provides that such fund shall not be liable to attachment. The classes of persons to be benefited are designated, and the corporation has no authority to create a fund for other persons than of the classes named. The corporation has power to raise a fund payable to one of the classes named in the statute, to set it apart to await the death of the member, and then to pay it over to the person or persons of the class named in the statute, selected and appointed by the member during his life, and if no one is so selected, it is still payable to one of the classes named." The appellate court of the First district of Illinois, in enforcing a contract made by the defendant in this case, containing substantially the same terms found in the contract now in suit, said, after adopting the view which has just been quoted from the opinion in *American Legion of Honor* v. *Perry,* that where the beneficiaries are prescribed by law, it is an evasion of its policy and a violation of its letter to say, that where a member has named a person not within the class to be benefited, and the corporation has issued the certificate to such person, such acts shall deprive the proper person or class of persons of all right to or interest in the fund. *Parke* v. *Welch, Ill. App. Ct. Rep.* These decisions settle the construction which should be given to that part of the contract which is put in contest in this case, and they settle it in strict accord with the purpose which the legislature had in view in authorizing the formation of such corporations as the defendant. The legislative purpose is clear. It was to provide a way by which men of small means might combine together to accumulate a fund for the benefit of those who should, as each dropped out by death, be dependent on him for food, raiment and shelter, and from which his dependents should, on his death, receive a certain fixed sum.

So it would seem to be entirely clear that the complainant's case falls directly within both the terms of the contract on which her action is founded and the purpose of the statute from which the defendant derives its corporate life and power. She is one of the next of kin of the deceased member of the defendant corporation. She is also his heir by force of our statute regulating descents, but not according to the canons of the common law. *Taylor* v. *Bray, 3 Vr. 182 ; S. C. on error, 7 Vr. 415.* But the phrase "legal heirs," as used in the defendant's by-laws, directing that in case a member shall have made no disposition of the benefit payable on his death, his benefit shall, on his death, be paid to his legal heirs dependent on him, is obviously used as the equivalent of next of kin, or perhaps in a still broader sense, meaning dependents as well as next of kin. That it is used in a sense broader than that which its words, understood in a technical sense, import, is placed beyond doubt when it is remembered that the fund, from which the benefit is payable, was established for the benefit of the widows and orphans of deceased members and persons dependent on deceased members. If, in this case, the deceased member had left no person who would have been entitled to succeed to his land as heir, but had left a widow, I do not think it could have been successfully contended that that part of the benefit fund payable on his death had lapsed because his widow was not his heir and could not, therefore, take it. It would be impossible for any court so to adjudge without first declaring, as a matter of law, that it was within the power of a corporation, organized to establish a fund for the benefit of the widows of its deceased members, so to frame its by-law as to cut off the rights of the very class of persons for whose benefit it was organized, and thus defeat the fundamental object of its organization. The complainant was not only one of the next of kin of a deceased member, but his dependent. She was the only person who was dependent on him at the time of his death. He left neither widow nor child, and the only dependent on him at the time of his death, or to whose support he contributed during his life, was the complainant. The proofs on this part of the case are full and free from

dispute. The complainant's right, therefore, to the fund for which she sues is, in my judgment, clear.

Has this court power to enforce the complainant's right? She has no remedy at law. The defendant made no promise to her. Brennan holds Britton's certificate of membership and refuses to surrender it. According to the terms of the contract, the defendant is not required to pay until this certificate is surrendered. This provision of its by-laws is reasonable and necessary. It was adopted to prevent the loss or waste of any part of its benefit fund in litigation in resisting illegal claims. The complainant, to put herself in a position where she will be entitled to the payment of the money in question, must first procure a judicial sentence either compelling, or declaring it worthless in his hands. Such a sentence can only be pronounced by a court of equity. The case comes, therefore, directly within the regulation of judicial power which declares, that where there is a civil wrong there ought to be a remedy, and if the law gives none, equity shall take jurisdiction in order that what is right may be done. The complainant is not entitled to interest. The money she is seeking to recover is not payable until Britton's certificate of membership has been surrendered. The defendant has offered to pay on the surrender of the certificate, but Brennan, by refusing to surrender it, has kept affairs in such a condition that the defendant could not pay with safety. No claim for the interest which has been lost by Brennan's conduct is made against him by the bill, and the question, therefore, whether he is liable for it or not, is not in the case.

The complainant is entitled to a decree declaring, that that part of the certificate, issued to Britton, which promises that payment shall be made to Brennan is void, and directing Brennan forthwith to surrender the certificate for cancellation; and also declaring, that the complainant is entitled to the $3,000 which became payable on her son's death, and directing that the defendant corporation shall within ten days after service of a copy of the decree pay that sum to the complainant. The decree will be made without costs as against the defendant corporation, but with costs as against Brennan.