MASSACHUSETTS CATHOLIC ORDER OF FORESTERS *vs.*
CATHERINE CALLAHAN & another.

Suffolk.    January 9, 1888. — March 6, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Beneficiary Association — Statute — Beneficiary.*

After the St. of 1882, c. 195, § 2, took effect, which enlarged the Pub. Sts. c. 115,
§ 8, so as to permit beneficiary associations to assist widows, orphans, "or
other relatives of deceased members," an application for membership, designat-
ing the applicant's mother as a beneficiary, was accepted by an association
whose constitution stated "its object" to be to make "suitable provision for
the widow and the orphan." The member subsequently married, and his wife
survived him. *Held,* that the designation of the beneficiary was binding upon
the association, and was not revoked by the marriage.

BILL OF INTERPLEADER against Catherine Callahan and
Hannah Keefe, to determine to whom a sum due upon the death
of a member of a beneficiary association should be paid. Hear-
ing before *Devens,* J., who reported the case for the consideration
of the full court. The facts appear in the opinion.

*J. P. J. Ward,* for Catherine Callahan.

*P. O'Loughlin,* for Hannah Keefe.

DEVENS, J. The Massachusetts Catholic Order of Foresters is
a beneficiary association, originally formed on July 30, 1879, un-
der the St. of 1874, c. 375, as amended by the St. of 1877, c. 204
(Pub. Sts. c. 115). The directing and governing body of the
organization or order consisted of what was termed a high court,
which was composed of representatives from the subordinate
courts to which the members of the order individually belonged.
It is through the high court acting by means of requisitions on
the subordinate courts that the sums payable on the decease of
the members, respectively known as death benefits or endow-
ments, are collected and paid. The association which brings
this bill of interpleader concedes its liability, and avers its readi-
ness to pay the sum of $1,000, which became due on the decease
of John J. Callahan, to the person legally entitled thereto.
John J. Callahan became a member of the order on June 10,

1883, and remained in good standing until the day of his death, on February 24, 1886, having paid all assessments made upon him. In his application for membership, which was according to the form prepared by the association, he designated his mother, Catherine Callahan, as the person to whom the sum due as endowment should be paid in the event of his decease. John J. Callahan was not then married; he did not then or afterwards live with his mother, nor was she then or afterwards dependent upon or supported by him. He subsequently married Mary J. Callahan, who survived him, but who is now deceased. Hannah Keefe, who was the mother of Mary J. Callahan, has been appointed the administratrix of her estate. Mrs. Keefe is also the next of kin and sole heir of her daughter. The sum due from the association is claimed by Catherine Callahan under the designation made to her in the application for membership, which was never changed. It is also claimed by Hannah Keefe, (either as administratrix or next of kin, as the court shall deem most correct,) upon the ground that the designation of his mother as the beneficiary of the fund due on his decease could not legally have been made by John J. Callahan; and that under section 5, article 16, of the constitution of the subordinate courts, by which it is provided that " in case no direction has been made by a brother, either by will or entry in his application for membership, as to the disposal of his endowment, the trustees of the court of which he was a member may cause the same to be paid to the person or persons whom they may find entitled thereto," it should be held that Mary J. Callahan was the person entitled thereto.

Under the statutes of Massachusetts as they existed in 1879, when the corporation was originally formed, the only right which the association had to provide for or to accumulate a fund for the purpose of paying a sum upon the decease of its member was " for the purpose of assisting the widows, orphans, or other persons dependent upon deceased members." Pub. Sts. c. 115, § 8. This section was amended by the St. of 1882, c. 195, § 2, which provided that the fund thus authorized should be " for the purpose of assisting the widows, orphans or other relatives of deceased members, or any persons dependent upon deceased members." The association republished its constitution and

by-laws in 1882, subsequent to the passage of the statute of 1882, with certain alterations made subsequent thereto, although the existence of that statute is not alluded to or noted. These changes had no reference to, nor were they occasioned by reason of, the larger powers with which the corporation was invested. They related to matters of detail only. It was under this constitution of 1882 that the association was conducting its business when John J. Callahan became a member, in 1883.

It is the contention of Mrs. Keefe, that although Catherine Callahan, as the relative of her son, might have been designated under the statute of 1882 as a beneficiary, yet this statute had never been adopted by the association. The statute required no formal adoption. It enlarged the powers of this and other similar beneficiary associations. When, after the passage of the statute of 1882, the association accepted the application of John J. Callahan and the designation which he might then lawfully make, it could not be said by it, or by any claimant, that it was exercising, and was only authorized to exercise, the more limited powers which it had under the earlier statute.

It is also contended, that by its constitution the association had so limited itself that it could not accept a designation of the mother. We have no occasion to consider whether a beneficiary association might not by its constitution so limit itself in its operations that its endowments should be only for the benefit of one or more classes of those whom it might lawfully entitle thereto, as for the widows only or orphans only of deceased members. We find no such intention manifested by this association. The argument on behalf of Mrs. Keefe is, that the constitution of 1882, under the title " Object," has the effect to limit the benefits of the association to two classes of persons only, widows and orphans. The " name and object " of the association are stated in a preamble to the constitution. It is declared that the object of the organization is to promote friendship, unity, and true Christian charity. It defines each, unity being defined as " unity in uniting together for mutual support, and in making suitable provision for the widow and the orphan." It would be a very forced construction to infer from this generality, that the association had thus excluded itself from making provision for those who were dependent on the deceased which

it legally might make when the constitution was originally formed, or for his relatives which it might lawfully make when Callahan became a member. The constitution of 1879, which was the one originally made, and that of 1884, which was in force when Callahan died, are each prefaced by the same recital of " name and object," yet each constitution declares, in defining the duties and powers of the subordinate court, that the principal object of the association is to secure " to the dependents of, its members " the sum of $1,000, payable on the death of such member. It is thus manifest, that under these two constitutions it could not have been intended to limit the benefits of this association to the widow and orphan, merely because they alone are mentioned in the declaration of its " name and object." In the constitution of 1882, in defining the powers of the subordinate courts, the phrase above quoted as to securing " to the dependents of its members " $1,000, is not used. Under that constitution, to hold that, because it had adopted as its preface a statement that among its purposes was a suitable provision for the widow and orphan, it could not provide for others, as " relatives " or " dependents," for whom the statute permits such association to provide, would not be a reasonable construction.

The deceased member had a right to designate as the beneficiary of the fund any person coming within the statutory provisions which enumerate those who may be thus designated. The law which permitted a relative merely, not being necessarily a dependent, to be designated, was in force when he made his designation. The designation of his mother by the deceased was therefore one to which the association had a right to assent, as it did assent, by accepting the order of the deceased. *Briggs* v. *Earl*, 139 Mass. 473. *American Legion of Honor* v. *Perry*, 140 Mass. 580. *Elsey* v. *Odd Fellows' Relief Association*, 142 Mass. 224. This was not revoked by the subsequent marriage of John J. Callahan, and his mother, Catherine Callahan, is now entitled to receive the fund of $1,000.

*Decree accordingly.*